Filed 12/23/24  P. v. Lokey CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JERRY GENE LOKEY,<br><br>    Defendant and Appellant. | C098388<br><br>(Super. Ct. No. 20FE020161) |

A jury convicted defendant Jerry Gene Lokey of second degree murder. Defendant contends the prosecutor committed prejudicial misconduct during closing argument by inappropriately presenting an example of voluntary manslaughter based on heat of passion.

Because defendant fails to show a reasonable likelihood that the jury construed or applied the complained-of example in an improper or erroneous manner, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was living in a mobile home (also referred to as a trailer) with his wife, mother, sister, and sister's boyfriend (victim). Defendant and victim did not have a good relationship.

On December 19, 2020, defendant left dirty dishes in the sink after victim had just washed the dishes. Enraged, victim put the dirty dishes in defendant's bed and poured syrup and batter on top. When defendant returned home, he and victim got into an argument over the dishes. The next evening, they exchanged words again. Victim later went outside and started kicking holes in the trailer.

While victim was outside, defendant called a friend and asked him to come over. When friend arrived, defendant appeared to be drunk and angry. Defendant went outside looking for victim and friend followed.

Upon seeing defendant and friend, victim took off his hat, threw it to the ground, threw the mug that he had in his hands, and asked, "You [motherfuckers] gonna jump me?" Victim ran at defendant, but defendant backed out of the way, so victim hit friend in the shoulder. Victim and friend briefly got into a fist fight before victim "lunged" at defendant again. Defendant pulled out a "chef's knife" and stabbed victim in the chest. Victim later died at the scene.

Defendant was charged with murder (§187, subd. (a)). The court's instructions to the jury included self-defense, first degree murder, second degree murder, provocation, voluntary manslaughter based on heat of passion, and voluntary manslaughter based on imperfect self-defense. For the heat of passion instruction, the court read CALCRIM No. 570.

In closing arguments, the prosecutor argued this was first degree murder, "not a sudden quarrel or self-defense." He described heat of passion as a situation in which " 'the [d]efendant was provoked. As a result of the provocation, he acted rashly and under the influence of intense emotion, that obscured his reasoning or judgment and that

2

the provocation would cause a person of average disposition to act rashly, without due deliberation.' " He emphasized the objective standard, the need for a direct tie to the provocation, and the importance of a cooling off period. The prosecutor directed the jury to think about the timeline and argued that defendant had time to call a friend, have that friend arrive, go outside, and swing a knife.

Defense counsel focused her closing argument on self-defense and the lack of premeditation and deliberation. Toward the end of her argument, she briefly discussed voluntary manslaughter. She argued that if the jury did not believe reasonable self-defense, then it was left with voluntary manslaughter because the incident was not a "calm, reflective atmosphere," but rather a "chaotic scene," a "classical fight, where there's a heat of passion, emotions are running and [defendant] responds."

In rebuttal, the prosecutor argued that self-defense did not fit the case. He also expressed the "need to explain exactly what [heat of passion] really, really is" and listed the elements as follows: "The [defendant] is provoked. He acts rashly as a result of that provocation and under the influence of intense emotion. The provocation would cause a person of average disposition – [m]eaning it's an objective standard." He described heat of passion as "something so overwhelming, that it blinds your judgment" and then provided what he termed "[t]he classic example," and the "way we learn about it in law school . . . you have a father and he's driving home and his house is at the end of a long rural country road, where there's one cul-de-sac with just a handful of houses. [¶] As he's driving down the long road, an ambulance goes roaring by, lights and sirens. [¶] . . . [¶] And [he] pulls up there's a car and it's smashed into a telephone pole and its engine is smoking and there's a little tiny bike all bent, all torn. [¶] . . . [¶] And the man realizes in that moment – [w]hen he looks, he sees the driver out of his car, doing the tests and failing them, with a Highway Patrolman. And he realizes in that moment what has happened: This drunk driver has hit and killed his child. Overwhelmed, he runs to

the man and starts hitting him time and time again, until he collapses, and he dies. [¶] That is the kind of overwhelming emotion."

According to the prosecutor, there was no heat of passion in this case because victim left the trailer to de-escalate the situation, but defendant chose to re-escalate it. In other words, there was a cooling off period, but defendant went out looking for victim. Defense counsel made no objection to any of the closing arguments.

The jury found defendant guilty of second degree murder. Defendant timely appeals.

DISCUSSION

Defendant contends the prosecutor's heat of passion example constituted prejudicial prosecutorial misconduct and his counsel's failure to object constituted ineffective assistance of counsel. Even assuming defendant's misconduct contention was properly preserved, we conclude it lacks merit.

When a claim of prosecutorial misconduct is based on the prosecutor's comments before the jury, the defendant must establish there is " 'a reasonable likelihood [that] the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Here, defendant does not question whether the example was a correct example of voluntary manslaughter. (See *People v. Beltran* (2013) 56 Cal.4th 935, 949 ["the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection"].) Instead, he finds fault with the way the prosecutor presented the example, specifically focusing on three phrases the prosecutor used: (1) "classic example," (2) "the way we learn about it in law school," and (3) "what [heat of passion] really, really is." Defendant's view of the prosecutor's argument is myopic. We do not look to isolated words or phrases, but rather "view the statements in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.) The prosecutor discussed heat of passion twice – in closing and in again rebuttal – and he

4

began both discussions by presenting the elements of heat of passion consistent with the law.  He then proceeded to argue whether the facts matched that law.  Viewed in that context, the phrases at issue were not objectionable.  We nevertheless proceed to defendant's concerns with each phrase.

In defendant's view, the phrase "the way we learn about it in law school" improperly referred to matters outside the record.  Not so.  At most, this phrase suggested that the prosecutor was offering a textbook example of heat of passion.  But defendant says that such a textbook or "classic example" remains problematic because it suggests that the facts must conform to the example and the provocation must be the same as in the example.  He finds additional support for this view from the prosecutor's statement that he wanted to explain "what [heat of passion] really, really is."  But defendant takes the phrase "what [heat of passion] really, really is" out of context.  That phrase was immediately followed by the elements of heat of passion, then the prosecutor provided "the classic example," but never suggested that the example was the *only* way to show heat of passion.  We " ' "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno, supra*, 60 Cal.4th at p. 667.)

Finally, defendant contends the phrases "classic example" and "the way we learn about it in law school" told the jury that the prosecutor was presenting a generally accepted understanding of the law rather than an opinion.  Again, we disagree.  A prosecutor "is afforded 'significant leeway' in discussing [both] the facts and the law in closing argument." (*People v. Azcona* (2020) 58 Cal.App.5th 504, 516.)  And we presume that the jury treated:  (1) the prosecutor's comments as words spoken by an advocate in an attempt to persuade and (2) the court's instructions as statements of the law. (*People v. Seaton* (2001) 26 Cal.4th 598, 646.)  Those instructions correctly described heat of passion (CALCRIM No. 570) and required the jury to follow the law as the court explained it. (CALCRIM No. 200.)  We presume that the jurors understood,

5

correlated, and followed these instructions.  (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

For these reasons, defendant has not met his burden to show a reasonable likelihood that the jury applied the example as defendant suggests.  Having reached this conclusion, we need not reach defendant's ineffective assistance of counsel claim. (*People v. O'Malley* (2016) 62 Cal.4th 944, 1010, fn. 12.)

DISPOSITION

The judgment is affirmed.


　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　MESIWALA, J.


We concur:


/s/
MAURO, Acting P. J.


/s/
KRAUSE, J.